UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:  Kerry M. Lewis and                                                                          Case No. 10-30305
       Jennifer A. Lewis,                                                                       Chapter 7
                  Debtors.

MEMORANDUM-DECISION AND ORDER ON REQUEST FOR COUNSEL FEES

Kerry M. Lewis and Jennifer A. Lewis commenced this chapter 7 proceeding on February 23, 2001. An order discharging the debtors was entered on June 12, 2001 and the case was closed on June 21, 2001. Upon motion, the case was reopened by order entered June 29, 2010, to permit Kerry M. Lewis ("Debtor") to amend his bankruptcy schedules to add, as a previously unlisted asset, certain causes of action that are now currently being pursued on behalf of himself and five other plaintiffs in state court in Oregon. The reappointed chapter 7 trustee noticed a sale of the asset back to the Debtor and realized $100,000 for the chapter 7 estate. The trustee's final report reflects that the Debtor is to receive surplus funds of $44,736.36, after payment of the trustee's commission and a 100% dividend paid on claims filed in the case.

Debtor's counsel, Pachulski Stang Ziehl & Jones LLP ("Pachulski Stang" or "law firm"), has filed a motion seeking the trustee to disburse directly to the law firm from the surplus funds payable to the Debtor $26,049.90, of which $25,721 is for legal fees and $328.90 for expenses. (Doc. No. 30). In support of its application, the law firm submitted a letter that it prepared directed to the Debtor in which it recites: "[T]his firm was retained to represent you in connection with your motion to reopen the chapter 7 bankruptcy case . . . and to serve as your bankruptcy counsel . . . . [T]here is currently $26,049.90 outstanding with respect to our firm's representation in this matter." (Exhibit A to Doc. No. 30). At the end of the letter, the law firm provided a statement, which the Debtor signed, that the trustee was authorized to transfer

1

$26,049.90 to Pachulski Stang in payment of its outstanding invoice. *Id.* The law firm provided no other documentation in its application to the court to support the fees claimed. On the return date of the motion, the court directed that counsel file a supplementary statement in support of the fees requested as counsel for the debtor. Counsel made the requested supplementary filing (Doc. No. 38) which this memorandum-decision now addresses.

### *Pachulski Stang's Representation of the Debtor*

As set forth in the affidavit of Beth E. Levine, of counsel to the law firm, Pachulski Stang was retained by the Debtor in February, 2010 to serve as bankruptcy counsel in the reopening of his 2001 case.[1] The primary tasks performed by the law firm for which it seeks compensation are (i) preparation and prosecution of the motion to reopen this case; (ii) amendment of Debtor's schedules to include the state law causes of action ("claims"); (iii) work related to the trustee's motion to sell the claims; and (iv) preparation and filing of proofs of claim. More than half of the fees sought, approximately $14,595.50 (56.7%), relate to the motion to reopen. Of the balance of the fees, $7,574 (29.4%) relate to the amendment of schedules and the trustee's motion to sell and $2,746.50 (10.7%) relate to the preparation and filing of claims.

The breakdown of the $25,721 in fees billed include (i) $1,453.50 (5.65%) for services rendered by partner James Stang, at a billable rate of $855/hour; (ii) $2,687.50 (10.4%) for services rendered by legal assistant Denise Harris ("DAH"), at a billable rate of $235/hour; and (iii) the balance, $21,580 (83.9%), for services rendered by Attorney Levine ("BEL") whose time is billed at $550/hour.[2]

---

[1] The law firm did not represent the Debtor in the initial filing. The original representation, which entailed preparation and filing of the petition, schedules, and statement of financial affairs and representation of the Debtor at the first meeting of creditors, was by local Syracuse counsel, for which the Debtor paid $435.00. *See* Fed. R. Bankr. P. 2016(b) statement, Disclosure of Compensation of Attorney for Debtor.

[2] This does not reflect the $20 to $25 increase in hourly rates charged for Denise Harris' and Attorney Levine's time in 2011.

2

*Jurisdiction*

The court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and may enter a final order pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

*Discussion*

Notably, the instant motion is uncontested. This fact, however, does not alleviate this court's independent obligation to assess the reasonable value of the services rendered the Debtor. *See In re Moukazis*, 479 B.R. 247, 248 (Bankr. E.D.N.Y. 2012) ("[T]he Court has a duty to determine the reasonableness of attorneys' fees regardless of whether a party in interest objects to them."); *see also* Fed. R. Bankr. P. 2016(b), 2017(b). If the court finds that the compensation sought is excessive, Bankruptcy Code § 329[3] authorizes this court to override the agreed payment terms between Debtor and his counsel. 11 U.S.C. § 329(b).[4] The burden of proof on all issues under Code § 329 rests with debtor's counsel. *In re Swartout*, 20 B.R. 102, 105 (Bankr. S.D. Ohio 1982) (citing *In re Underground Utils. Constr. Co., Inc.*, 13 B.R. 735, 737 (Bankr. S.D. Fla. 1981)). Thus, Pachulski Stang bears the burden of proving that the compensation it seeks is reasonable. *See Cohn v. U.S. Trustee (In re Ostas)*, 158 B.R. 312, 323 (N.D.N.Y. 1993).

Courts have observed that "[t]he Bankruptcy Code has a specific statutory scheme . . . to utilize when analyzing fee requests in most, but not all chapters of the Code." *In re Datta*, No. 08-72740, 2009 WL 1941974, at *3 (Bankr. E.D.N.Y. July 2, 2009). In a chapter 11, 12 and 13 case, a court may look to Bankruptcy Code sections 328, 330 and 1103, which govern professionals' compensation requests. *Id.* None of these Code sections specifically applies,

---

[3] *See* 11 U.S.C. §§ 101–1532 ("Bankruptcy Code" or "Code").
[4] The payment agreement in this case is unavailable to the court as the law firm failed to make the disclosure required by Code § 329 and Fed. R. Bankr. P. 2016(b). However, from the billing statements submitted by applicant, it appears that the agreement was that the law firm would represent the Debtor on an hourly basis for services rendered.

3

however, to a fee request made in a chapter 7 case.[5] *Id.* As a result, the considerations and factors set forth in Code § 330 have been found helpful by some courts when determining the reasonableness of fees in a chapter 7 case. *Id.* Because of the sparse case law examining the reasonableness of attorney's fees in chapter 7 cases and the unique circumstances presented by this case, this court agrees that the factors set forth in Code § 330 are useful in its analysis.

Code § 330(a)(3) provides that when determining the reasonableness of the compensation requested, a court:

> shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

Based upon the foregoing criteria, the court finds: (A) the time spent, (B) the rates charged, (C) the necessity of the services, (D) the time spent relative to a task's complexity, and (E) the practitioner's skill, most relevant to its assessment of the fees charged.

Clearly, the services rendered in connection with the motion to reopen the case were necessary to the administration of this case. Absent this case being reopened, creditors of the

---

[5] The law firm might argue that it was not filing a fee application for court approval but merely complying with the chapter 7 trustee's request that in order to disburse funds directly to the law firm, a court order was required. Nevertheless, since the compensation is being paid pursuant to court order, the court finds that the fees are subject to this court's review.

4

Debtor would have received no payment on their claims. Instead, creditors received 100% payment, plus interest. The law firm, known for its specialized bankruptcy practice, demonstrated an appropriate level of skill performing the overall services within a reasonable period of time. The court is mindful of the sensitive nature of the legal representation at issue and the potential for negative consequences on the Debtor's ability to pursue the state law claims on his own behalf. Because the claims—unknown to the trustee at the time—were neither abandoned nor administered by the trustee, they remained property of the Debtor's estate even after the case was closed. *See* Code §§ 541(a) and 554(d).[6] Up until the time the court approved the trustee's sale of the claims back to the Debtor, the Debtor had no standing to pursue the claims. They continued to belong to the estate and were subject to administration only by the trustee. *See Vucak v. City of Portland*, 96 P.3d 362, 366 (Or. Ct. App. 2004) (dismissing personal injury tort claim because plaintiff never properly scheduled such claim in bankruptcy case; thus, it was not abandoned to debtor and debtor did not have standing to bring claim).

Given the rates charged at the sophisticated level of a New York City law firm, the number of hours spent on individual tasks, however, was disproportionate to the services rendered. Furthermore, notwithstanding the significance of the services rendered by the law firm, the actual tasks undertaken were not complex.

The law firm spent almost all of the 29.3 hours reflected in its first invoice on the motion to reopen, including 13.2 hours for research and preparation of what, in the end, was a very straight-forward five-page motion. Although the motion cites to relevant case law, the amount of time spent on research was excessive given that it is universally accepted that the need to administer a new asset presents the textbook case for granting a motion to reopen. Accordingly,

---

[6] The claims became property of the estate on the petition date, notwithstanding Debtor's failure to disclose them on his schedules. Code § 541(a).

5

the court disallows 8.5 hours of time as noted[7] and reduces the overall fees by $4,675, the amount charged for this time.

Of the balance of time spent on the motion to reopen, certain time entries are (i) for tasks ministerial in nature and should, in this court's opinion, be part of overhead; (ii) relate to tasks that are administrative in nature and are not billable as attorney time; or (iii) were for the personal convenience of the attorney and not services beneficial and billable to the Debtor. In this latter category are numerous entries regarding the law firm's adjournment requests of a self-scheduled motion. The court notes that Debtor-counsel's physical appearance at the hearing was waived and counsel allowed to appear telephonically, after the court granted two requested adjournments to accommodate counsel's schedule. Based upon the court's review of the time records, the court further reduces the time billed on the motion to reopen by an additional 5.2 hours and disallows fees charged for this time in the amount of $2,450.50.[8]

In connection with the law firm's services related to (i) amendment of the Debtor's schedules; (ii) trustee's motion to sell the claims; and (iii) preparation and filing of the proofs of claim, the court finds that these services were reasonable and necessary. Amending the schedules and facilitating the trustee's motion to sell was central to the representation as was the filing of proofs of claim undertaken at the direction of the court. These services benefited the estate and creditors. The court finds the fees billed to be reasonable with respect to these

---

[7] The time billed by Attorney Levine (BEL) is reduced as follows: Research on 2/2/10 from 2.6 to 1 hour; Research and draft motion on 2/3/10 from 5.3 to 2 hours; Draft motion, review and revise on 2/4/10 from 3.7 to 1 hour; (leaving intact, Review and revise motion on 2/8/10 at .4); Finalize motion on 2/10/12 from .9 to 0 hours. Fees charged relative to these deductions total $4,675.00.

[8] The following time entries are disallowed: Letter enclosing motion papers by Legal Assistant Denise Harris (DAH) on 2/18/10 - .3 hours; Finalize cover letter to clerk's office by BEL on 2/4/10 - .3 hours; Finalize adjournment by DAH on 2/11/10 - .5 hours; Communications re adjournment by BEL on 2/24/10 - .4, .3 and .4 hours; Communications re adjournment by BEL on 3/2/10 - .5 and .3 hours; Finalize adjournment by BEL on 4/20/10 - .7 hours; Conference re adjournment by BEL on 4/21/10 - .1; Conference re adjournment by DAH on 4/21/12 - .2 hours; Entries re adjournment by BEL on 6/7/10 - .7 and .2 hours; and Adjournment request by DAH on 6/9/10- .3 hours. Fees charged relative to these deductions total $2,450.50.

services.

The law firm requests reimbursement of $328.90 in expenses. Of this amount, $260 is attributable to the fee to reopen this case. The balance of the expenses cover usual and customary costs. The court finds the expenses incurred by the law firm to be reasonable and awards the full amount requested.

*Conclusion*

The court awards Pachulski Stand reasonable compensation as counsel to the Debtor in the amount of $18,595.50 and expenses in the amount of $328.90, for a total award of $18,924.40. The trustee is authorized to disburse this amount directly to Pachulski Stang from the surplus funds on hand.

So ordered.

Dated: November 20, 2012         Margaret Cangilos-Ruiz
       Syracuse, New York        United States Bankruptcy Judge